THE STATE OF OHIO, APPELLEE, v.
GORDON, APPELLANT.

(No. C-820315—Decided March 9, 1983.)

Mr. Simon L. Leis, Jr., prosecuting attorney, Mr. Christian J. Schaefer and Mr. Claude N. Crowe, for appellee.

Mr. Hal R. Arenstein, for appellant.

BLACK, J. The principal questions raised in this appeal are: whether the crime of obstructing official business in violation of R.C. 2921.31[1] is a lesser included offense of the crime of obstructing justice in violation of R.C. 2921.32[2]; and whether the evidence was sufficient to prove that appellant's acts amounted to hampering or impeding police officers in the performance of their duty, in violation of R.C. 2921.31.

Because appellant, Laverne Gordon, challenges the sufficiency of the evidence, we will review it in detail. For a period of two weeks, Cincinnati police officers had kept appellant's residence in the West End of Cincinnati under sporadic surveillance in their search for two men wanted for aggravated robberies, Glen Waller (appellant's social acquaintance) and Darrell Jones. Both men had been seen entering or leaving the house. Appellant was advised of the foregoing, and she said that if either man came back, she would "do what she could."

The residence where appellant and her daughters lived was a one-story building containing a living room, a kitchen, a bedroom and a bathroom. It had a side door that opened onto a small courtyard surrounded on all sides by the residence and a twelve-foot fence; a door through the fence to the street was kept locked.

On the evening in question, Jones was observed knocking on appellant's front door and entering the residence. Apparently he came to retrieve a sweater and jacket he had left there on another oc-

[1] R.C. 2921.31, obstructing official business, reads in full:

"(A)   No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.

"(B)   Whoever violates this section is guilty of obstructing official business, a misdemeanor of the second degree."

[2] R.C. 2921.32, obstructing justice, reads in full:

"(A)   No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

"(1)   Harbor or conceal such other person;

"(2)   Provide such other person with money, transportation, a weapon, a disguise, or other means of avoiding discovery or apprehension;

"(3)   Warn such other person of impending discovery or apprehension;

"(4)   Destroy or conceal physical evidence of the crime, or induce any person to withhold testimony or information or to elude legal process summoning him to testify or supply evidence;

"(5)   Communicate false information to any person.

"(B)   Whoever violates this section is guilty of obstructing justice, a misdemeanor of the first degree. If the crime committed by the person aided is a felony, obstructing justice is a felony of the fourth degree."

casion. Peering out a front window he saw the police approaching. What happened next is the subject of a contradiction between direct testimony and reasonable inferences from the totality of the circumstances. The police did not observe Jones' movements between his looking out the window and his discovery under one of the beds. Appellant and Jones testified that Jones went out the side door, and his jacket was later found on the roof of the house, just above the door. Jones said he saw police in the back of the house, abandoned any thought of escape that way, persuaded appellant's daughter to reopen the door, re-entered the house and hid first in the bathroom and later under the bed where he was discovered. Appellant testified that she did not see Jones from the moment he exited the house until his discovery, testimony about which the trial court expressed disbelief, having considered the small size of the house and the improbability of Jones' re-entry without being seen by appellant.

Two police officers arrived at the front door promptly after seeing Jones at the window. Appellant answered their knock, and upon being asked where the man was, she said he was not there, and that he had just gone out the side door, which was open. One officer checked outside that door and found nothing. Meanwhile about a dozen additional police officers arrived at this location and surrounded the house on all sides. The jacket on the roof was discovered by an officer who climbed up on an adjacent house. The two officers who had made the original entry left the residence to assist the outdoor search, and three other officers went into the house about ten or fifteen minutes later. Responding to their questions, appellant insisted that Jones was not in the house, but allowed a further search of all four rooms. One officer moved aside some clothes on the floor obstructing his view under one of the beds and saw Jones' arm and leg. The arrest followed.

Appellant was indicted for harboring Darrell Jones with purpose to hinder his discovery and apprehension in violation of R.C. 2921.32(A)(1), obstructing justice. At the close of the state's case, appellant moved under Crim. R. 29 for acquittal, or alternatively, reduction of the charge to obstructing official business under R.C. 2921.31.[3] The motion was overruled. After all the evidence was in, however, the court held appellant guilty of obstructing official business.

Appellant's second assignment of error, that the guilty finding was against the manifest weight of the evidence, is without merit because the evidence against appellant was ample and the finding was not a manifest miscarriage of justice.

Two issues are presented under the first assignment of error, in which appellant contends that the finding of guilty was contrary to law: (1) whether obstructing official business is a lesser included offense of obstructing justice, and (2) whether the evidence was legally sufficient to sustain a conviction of obstructing official business.

The Supreme Court laid down the test of determining whether one offense is a lesser included of another in *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 384 [18 O.O.3d 528], as follows:

"An offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot be committed without the offense of the

---

[3] A ruling on the question whether obstructing official business is a lesser included offense of obstructing justice is sufficiently important to the administration of criminal justice that we are unwilling to hold in the instant case that appellant either invited the error she now claims the trial court made or waived her claim of error by making the alternative motion to reduce the charge at the close of the state's case.

lesser degree also being committed and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."

Requirement (i) is met because obstructing justice is either a misdemeanor of the first degree or a felony of the fourth degree (depending on the crime committed by the person aided by the accused), and obstructing official business is a misdemeanor of the second degree.

Requirement (ii) presents more difficulty, by reason of the phrase "without privilege to do so" in R.C. 2921.31 (obstructing official business), a phrase not found in R.C. 2921.32 (obstructing justice). While it is undoubtedly true that if an accused had a privilege to conceal a felon, under some extraordinary circumstances, he would have a valid justification for his acts and could not be convicted of obstructing justice even though R.C. 2921.32 does not contain the phrase "without privilege to do so." The inclusion of this phrase in R.C. 2921.31 raises the questions whether this is an essential element, and if not, what is its nature.

A privilege is an immunity, license or right that springs from constitutional law, statutory law or common law, or that is bestowed by express or implied grant.[4] The range is broad, and the number of possible privileges is tremendous. The existence, nature and scope of a privilege claimed in any particular instance depend on the circumstances surrounding the actor, matters primarily within the grasp of the actor himself. He concedes that he acted as charged, but claims immunity by reason of the privilege ("I did it, but —"). If he wins the point he cannot be convicted of crime.[5] We believe that "privilege" is a justifying circumstance precluding conviction, similar to a mitigating circumstance that reduces a greater homicide to a lesser one. The Supreme Court held in *State* v. *Solomon* (1981), 66 Ohio St. 2d 214 [20 O.O.3d 213], that the mitigating circumstance that reduces aggravated murder or murder to voluntary manslaughter, found in R.C. 2903.03,[6] is not an essential element of that lesser crime but a mere mitigating circumstance, and that its inclusion in the manslaughter statute does not prohibit manslaughter from being an "included"

---

[4] R.C. 2901.01(L) reads in full:

" 'Privilege' means an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity."

[5] In criminal cases, the existence of a privilege to act or speak or refrain from acting or speaking will most often be a matter of law (such as a constitutional right "to be secure in their persons, houses, papers, and effects"). The statutory definition, set forth in fn. 4, *supra,* includes rights "bestowed by express or implied grant," and the existence or scope of such rights might raise factual as well as legal issues. Responsibility for criminal acts, however, can be waived or eliminated only by official grant of immunity, not by individual action of private persons or unauthorized public officials. Nevertheless, assuming *arguendo* that a factual issue is raised by a defendant, it could be argued that the existence and scope of a claimed privilege falls within the definition of an affirmative defense, found in R.C. 2901.05 (C)(2): "* * * an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

[6] The old mitigating circumstance in R.C. 2903.03, "while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force," was amended in 1982 to read "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." This change has no effect, in our opinion, on the character of this factor as being a mitigating circumstance rather than an essential element of voluntary manslaughter.

crime of aggravated murder and murder. We hold that the absence of privilege is not an essential element of obstructing official business that the state must prove beyond a reasonable doubt.

Concluding with requirement (ii), the essential elements of obstructing official business are included in obstructing justice. The crime of obstructing justice cannot be committed without concurrently committing the crime of obstructing official business.[7]

Requirement (iii), that one element of obstructing justice is not required to prove commission of obstructing official business, is satisfied; for instance, the actor may intend simply to prevent, obstruct or delay official performance without intending to hinder the discovery, apprehension, prosecution, conviction or punishment of another crime, or to assist another to benefit from the commission of a crime.

We hold that the crime of obstructing official business under R.C. 2921.31, is a lesser included offense of obstructing justice under R.C. 2921.32(A)(1).

Appellant also claims that the evidence was insufficient to prove beyond a reasonable doubt that she did an act which hampered or impeded. We disagree. In the first place, we believe appellant's misdirecting the police officers outside the house was, under the circumstances disclosed by the record, an "act" within the intended scope of R.C. 2921.31. The police were in hot pursuit of a felon who had been observed entering appellant's residence; she knew the officers wanted to apprehend him, and she was asked directly where he was. The evidence was sufficient to support a finding by the trier of fact that beyond a reason-

able doubt she knew the felon was inside the house. Nevertheless, she misdirected the officers outside the house. She did this by an oral statement. Whether she also pointed to the opened door is not revealed by the record, but this is immaterial. In our judgment, the misdirection constituted the type of "act" that R.C. 2921.31 (A) was intended to prohibit. We believe that the instant case is distinguished on the facts from earlier interpretations of R.C. 2921.31(A), holding that an unsworn false oral statement to the police, in and of itself and without more, is not a violation of this statute. See *Dayton* v. *Rogers* (1979), 60 Ohio St. 2d 162 [14 O.O.3d 403] (defendant was held not to have violated the statute when she orally confirmed a false statement about his name by the driver of an automobile stopped for a traffic violation); *State* v. *Stephens* (1978), 57 Ohio App. 2d 229 [11 O.O.3d 301] (defendant did not "obstruct official business" when she stated that she did not know and had never seen the wanted person, but the police knew she was lying and observed the wanted person in the basement of the house where the defendant was questioned). In those cases, the oral statements had no more effect on the performance of the police than silence or a refusal to answer would have had. In the instant case, however, the defendant sent the hotly pursuing officers in the wrong direction. We believe it is immaterial whether she did this by pushing them out the open side door, pointing in that direction, or stating that the felon had exited that door.

In the second place, we believe the evidence, reviewed above, was sufficient to prove to a reasonable mind beyond a reasonable doubt that the result of ap-

[7] In *State* v. *Ford* (Feb. 28, 1979), Hamilton App. No. C-780323, unreported, we held that after a person has been acquitted of obstructing official business, he is subjected to double jeopardy when he is later charged with obstructing justice for the same conduct. We stated that R.C. 2921.31 does not require proof of a fact not also required by R.C. 2921.32, and that every violation of R.C. 2921.32 will inevitably work an obstruction of the official business of the public officials and will thus necessarily violate R.C. 2921.31. We adhere to that position.

pellant's misdirection constituted a substantial impediment, even though not a successful one, to performance by the police. Fifteen officers were sent on a false chase, and the misdirection interrupted for an appreciable time (fifteen minutes) their progress towards the apprehension of the felon.

The conviction was not contrary to law. The first assignment of error is without merit. We affirm.

*Judgment affirmed.*

SHANNON, P.J., and KLUSMEIER, J., concur.