**CITY OF EAST CLEVELAND, Appellee,**

v.

**ODETELLAH, Appellant.**■

[Cite as *E. Cleveland v. Odetellah* (1993), 91 Ohio App.3d 787.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63144.

Decided Nov. 15, 1993.

*Esther Harber,* City Prosecutor, for appellee.

*James Willis,* for appellant.

PATRICIA A. BLACKMON, Judge.

This appeal requires us to decide two issues: whether a trial judge's verdict is against the manifest weight of the evidence, when the trial judge finds a merchant guilty of the crime of unlawful restraint for handcuffing an employee to a chair for seven hours and whether the prosecution is required to prove lack of probable cause to arrest a suspect as an element of the offense of unlawful restraint before a trial court may sustain a conviction for unlawful restraint.

Amin Odetellah, defendant-appellant, timely appeals his conviction after a bench trial for unlawful restraint and subsequent sentence by the East Cleveland Municipal Court Judge. Odetellah challenges the trial court's decision and assigns the following errors for our review:

"I. The verdict finding the defendant guilty of the offense of unlawful restraint is against the manifest weight of the evidence and is contrary to law.

"II. Where a merchant defends a charge of unlawful restraint (R.C. of Ohio, § 2905.03), on the basis of a defense provided by R.C. of Ohio, § 2935.041, the state has the ultimate burden of persuasion on the issue of probable cause to arrest and any claim of unreasonableness."

Having reviewed the record and the legal arguments presented by both parties, we find that the assignments of error are not well taken, and we affirm the trial court's decision. The apposite facts follow.

Tanya Smith was employed as a lottery sales clerk at Odetellah's store, Konni's Grocery, in East Cleveland on June 17, 1991. She arrived at the store and was confronted by Odetellah, who asked her to come to his office. Upon entering the office and after she was seated, Odetellah handcuffed her left wrist to a chair. The chair was positioned next to a desk with a telephone.

Odetellah accused Smith of taking $1,600 from the lottery proceeds on Saturday, June 15, 1991. He informed her that she was not leaving until he received his money. After this verbal exchange, Smith concluded that Odetellah expected her to call someone to get the $1,600. Smith made a telephone call to a friend and informed the friend of the situation but did not call the police. While Smith was in the office, Odetellah called the Lottery Commission to learn the exact amount that was missing. Odetellah told Smith that she was facing criminal charges and jail if she did not come up with his money. Neither Smith nor Odetellah called the police and Smith remained in the room handcuffed.

At approximately 9:20 a.m., an hour or so after Smith was handcuffed and after she called her friend, John Wilson arrived at the store. Wilson entered the store and proceeded to the lottery booth. He inquired as to Smith's whereabouts and was told by Odetellah that Smith was in his office. Wilson then exited the store without seeing Smith or calling the police.

At 1:30 p.m., Wilson returned and asked Odetellah if he could see Smith. Odetellah agreed and Wilson entered the office where Smith was seated. Smith showed him the handcuffs on her wrist and told him she had been handcuffed since that morning. Wilson told Odetellah, "you can't do that." "If you want to make a citizen's arrest, you have to call the police." Odetellah said, "I want my money. I don't give a what." Odetellah also said that he was going to keep Smith until he got his money. Wilson asked Odetellah what he was going to do if he did not get his money that day. Odetellah said that he would take her to the lottery headquarters before it closed.

Wilson left and went to a store owned by his brother, which was located a short distance from Odetellah's store on the same street. When he got there he called the police and reported that Smith was being held by Odetellah. He also called Smith and told her he had called the police. Odetellah was listening in on the conversation and stated that he was going to get his money before he released her.

The East Cleveland police dispatched a car to the grocery store at 2:28 p.m. When the police arrived they spoke to Odetellah. They asked him if he had a female handcuffed to a chair in his office. He admitted that he did and explained that she had taken $1,600 in lottery money and he was not going to let her go until he had confirmation from the Lottery Commission of the amount of money she allegedly had taken. Upon further questioning of Odetellah, the police

entered the office and saw Smith handcuffed to the chair. Odetellah and Smith confirmed that she had been handcuffed since about 8:10 a.m. and Smith's left wrist was still handcuffed to the arm of the chair.

The police removed the handcuffs with their keys, took a statement from Smith, released her, and placed Odetellah under arrest for kidnapping and coercion. He was later charged with unlawful restraint and after a bench trial was found guilty of the crime charged.

■ The essence of Odetellah's first assignment of error is that he is a merchant and is privileged to detain a person he suspects of theft. The trial court, however, concluded that Odetellah's action of handcuffing his employee for seven hours was unreasonable, beyond the privilege, and criminal. We agree with the trial court.

In this case, the standard of appellate review is whether the verdict preponderates heavily against the manifest weight of the evidence to the point that if the verdict is allowed to stand, it will result in a miscarriage of justice. The reviewing court, therefore, weighs the evidence and evaluates the credibility of the witnesses without reviewing the evidence in the light most favorable to the prosecution. This is done presumptively because the evidence is quantitatively sufficient but qualitatively defective.

In *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 721, the court set forth the following test for evidentiary weight:

" * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See *Tibbs v. Florida* (1982), 457 U.S. 31, 38, 42[, 102 S.Ct. 2211, 2216, 2218, 72 L.Ed.2d 652, 658–659, 661–662][.]"

Odetellah argues that as a merchant he could detain a theft suspect in a reasonable manner while efforts were made to recover his property. He concludes that for this reason Smith's detention was valid and reasonable. This argument does not frame the real issue before this court. The question before us is not whether Odetellah could detain Smith but whether he acted in a reasonable manner under the privilege when he detained her.

The offense of unlawful restraint provides that "no person, without privilege to do so, shall knowingly restrain another of his liberty." East Cleveland Municipal Code 533.08. See, also, R.C. 2905.03.

R.C. 2901.01(L) provides that:

" 'Privilege' means an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity."

R.C. 2935.041 provides that:

"(A) A merchant, or his employee or agent, who has probable cause to believe that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, for the purposes set forth in division (C) of this section, detain the person in a reasonable manner for a reasonable length of time within the mercantile establishment or its immediate vicinity.

" * * *

"(C) An officer, agent, or employee of a library, museum, or archival institution pursuant to division (B) of this section or a merchant or his employee or agent pursuant to division (A) of this section may detain another person for any of the following purposes:

"(1) To recover the property that is the subject of the unlawful taking, criminal mischief, or theft;

"(2) To cause an arrest to be made by a peace officer;

"(3) To obtain a warrant of arrest."

R.C. 2935.06 provides that:

"A private person who has made an arrest pursuant to section 2935.04 of the Revised Code or detention pursuant to section 2935.041 of the Revised Code shall forthwith take the person arrested before the most convenient judge or clerk of a court of record or before a magistrate, or deliver such person to an officer authorized to execute criminal warrants who shall, without unnecessary delay, take such person before the court or magistrate having jurisdiction of the offense. * * * "

We recognize that Odetellah has a privilege to detain a person suspected of a theft to effectuate an arrest or to recover property that was the subject of the unlawful taking, but he also has responsibilities that are inseparable from the privilege. First, the privilege requires that the merchant act "in a reasonable manner." R.C. 2935.041(A). Second, a private citizen making an arrest or calling the police to make an arrest has a duty to do so "without unnecessary delay." R.C. 2935.06.

In this case, Odetellah detained Smith for nearly seven hours in an attempt to get her to come up with the money that she had allegedly stolen two days prior to the detention. Smith did not have the money in her possession nor did Odetellah know exactly how much money was allegedly stolen. There was no money to be recovered by simply detaining Smith. Therefore, Odetellah's detention of Smith

so that she could raise the money from other sources was not a detention for purposes of "recovering property" within the meaning of R.C. 2935.041(A).

It is not reasonable to detain a suspect for an unreasonable amount of time to coerce him or her into taking some action or to provide information. See *Cleveland Hts. v. Stross* (1983), 10 Ohio App.3d 246, 10 OBR 343, 461 N.E.2d 935. This court held that where an employee suspected of theft is detained for five hours and coerced into making an involuntary confession, the detention was not conducted in a reasonable manner as contemplated by R.C. 2935.041(A). *Id.* We find that a detention for an unreasonable length of time to coerce an employee suspected of theft into making restitution is no more reasonable than a detention to coerce a confession. Odetellah did not detain Smith in a reasonable manner as contemplated by R.C. 2935.041(A).

Moreover, Odetellah acted well beyond the scope of his authority. His actions were tantamount to assuming the role of the police, prosecutor, judge, and jury. In essence, he arrested Smith, charged her with theft, found her guilty, sentenced her to a penalty of restitution, and attempted to execute the sentence. This was clearly not the intent of R.C. 2935.041. Accordingly, we find as a matter of law that Odetellah acted outside the scope of the privilege he asserted.

Even if we assume that Odetellah intended to arrest Smith, his manner was unreasonable. Odetellah testified that he intended to arrest Smith but did not have an opportunity to call the police. The record revealed that Odetellah had several occasions to call the police but did not. In fact, when asked by Wilson his intention if he did not receive the money, Odetellah replied that he would take Smith to the Lottery Commission, not to the police.

Additionally, Odetellah acted inconsistently with his duty under R.C. 2935.06. He detained Smith for nearly seven hours and did not call the police. This detention was not "without unnecessary delay" as required of a private citizen making an arrest. See R.C. 2935.06. Without unnecessary delay implies immediate action.

■ Odetellah also argues that Smith consented to or acquiesced in her detention. This argument has no merit. We recognize that where a suspect voluntarily cooperates with a merchant, there is no "restraint" within the meaning of R.C. 2905.03. See *Mullins v. Rinks, Inc.* (1971), 27 Ohio App.2d 45, 56 O.O.2d 218, 272 N.E.2d 152. In this case, Odetellah testified that he did not detain Smith, she consented to the detention. Smith says he detained her. Clearly, there is conflicting evidence, which raises a question of fact to be resolved by the trier of fact. The weight to be given that evidence and the credibility of the witnesses are primarily decisions for the factfinder. *State v.*

*DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. In this case, Smith testified that she did not consent to the detention even though she had access to a phone and did not attempt to call the police. She was handcuffed and did call a friend to let him know that she was being detained. It was as a result of that call that Wilson asked to see her and eventually called the police. When the police came, Odetellah insisted that he would not release her until she came up with his money. From these facts, we conclude that there was competent, credible evidence that Smith did not consent to Odetellah's detention.

Accordingly, a careful review of the entire record reveals no indication that a miscarriage of justice would occur if this verdict is allowed to stand.

The issue raised by the second assignment of error is whether the state had the ultimate burden of persuasion in presenting evidence that Odetellah detained Smith "without privilege to do so." Odetellah argues that the state had the burden of proving that he lacked probable cause and acted in an unreasonable manner. This argument has no merit.

██ A defendant bears the burden of going forward with evidence of an affirmative defense and bears the burden of proof by a preponderance of the evidence. R.C. 2901.05(A). An affirmative defense is a defense expressly designated or one involving an excuse or justification. R.C. 2901.05(C).

The Court of Appeals for Hamilton County held that "without privilege to do so" is a justifying circumstance rather than an essential element that the state must prove beyond a reasonable doubt. *State v. Gordon* (1983), 9 Ohio App.3d 184, 187, 9 OBR 294, 297–298, 458 N.E.2d 1277, 1280. The court in *Gordon* reasoned that notwithstanding the absence of the phrase "without privilege to do so" from the offense of obstructing justice, obstructing official business is a lesser included offense because the phrase was merely a justifying circumstance. *Id.* at 186, 9 OBR at 296–297, 458 N.E.2d at 1279. This court applied the same reasoning when it held that unlawful restraint is a lesser included offense of kidnapping. See *State v. Ricchetti* (1991), 74 Ohio App.3d 728, 600 N.E.2d 688.

██ The state has the duty to prove the essential elements of unlawful restraint beyond a reasonable doubt, but there is no additional constitutional requirement to prove the absence of an affirmative defense. *State v. Bush* (June 4, 1992), Cuyahoga App. No. 60603, unreported, 1992 WL 125586 (held: even though proof of affirmative defense of self-defense, it is still decision of jury to weigh it and decide whether to believe it). The defendant has the burden of going forward on the affirmative defense of privilege. R.C. 2901.05.

Once the defendant presents sufficient evidence of privilege by a preponderance of the evidence, then it is properly placed before the trier of fact. See *State v. Jackson* (1986), 22 Ohio St.3d 281, 22 OBR 452, 490 N.E.2d 893. The trier of fact considers whether the state has met its burden to prove each essential element beyond a reasonable doubt as well as the defendant's affirmative defense by a preponderance of the evidence. Thus, the state does have the ultimate burden of proof but does not have the burden of proving that Odetellah lacked probable cause or acted in an unreasonable manner with respect to the privilege he asserted.

█ In this case, Odetellah elected to have a bench trial. Because the case was tried to the court, rather than a jury, the judge was presumed to know the law. "Indeed, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record." *State v. Eubank* (1979), 60 Ohio St.2d 183, 187, 14 O.O.3d 416, 418, 398 N.E.2d 567, 570, citing *State v. White* (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 134–136, 239 N.E.2d 65, 69–70. Therefore, we presume that the trial court properly considered the burdens of the respective parties in this case.

Odetellah presented sufficient evidence to establish privilege by a preponderance of the evidence. Nonetheless, proof of this justifying circumstance does not guarantee the trier of fact will believe it. See *Bush, supra.* The weight of evidence and credibility are still primarily for the trier of fact. *DeHass, supra.* The state presented competent, credible evidence of Odetellah's guilt. Accordingly, the state met its burden of proof.

*Judgment affirmed.*

SPELLACY, P.J., and HARPER, J., concur.