OPINION
Appellant, Kathy Dibell Smith, brings this appeal from a judgment of the Ashtabula Municipal Court finding her guilty of assault following a bench trial. For the reasons adduced below, the judgment of the trial court is affirmed.
On August 17, 1998, a complaint was filed in the Ashtabula County Municipal Court charging appellant with assault upon Linda G. Pykus ("Ms. Pykus"), in violation of R.C. 2903.13(A). Subsequently, the matter came on for a bench trial on February 17, 2000.
The events giving rise to the complaint against appellant occurred on August 6, 1998, when Joel Sidley ("Joel"), who was seven years old at the time, was visiting with his aunt, Ms. Pykus, and his paternal grandmother, Dorothy M. Sidley ("Ms. Sidley").[1] Although Joel's mother, Charlene Smith ("Ms. Smith"), was suppose to come over and pick up the child, appellant, the maternal grandmother, showed up at Ms. Sidley's house to retrieve the child because Ms. Smith was called into work early.[2]
When appellant entered the residence, she attempted to take Joel with her; however, the child did not want to leave. After some exchange of words, appellant allegedly grabbed Ms. Pykus and dug her hands and nails into Ms. Pykus' arms. As a result of this incident, Ms. Pykus received scratch marks and bruises on the inside of her arms. Ms. Sidley, the victim's mother, noticed these marks on her daughter's arms.
In an attempt to leave the residence, appellant pushed Ms. Pykus against the wall and dragged Joel from the house as he was screaming and crying. While outside, appellant allegedly grabbed Ms. Pykus' arms again and pushed her up against the door of a car. After this incident, appellant threw the child into the car and drove off.
When appellant left the premises, Ms. Pykus told her mother, who had observed the entire altercation between her daughter and appellant, to call 911. Subsequently, Patrolman Perry Johnson, Jr. ("Patrolman Johnson"), was dispatched to the residence and questioned Ms. Sidley and Ms. Pykus about the incident. Although the officer observed scratch marks on Ms. Pykus' arms, no pictures were taken of these injuries.
After the state rested, appellant took the stand and testified to a different scenario of events. Appellant indicated that as she was attempting to take the child, he was being very defiant. As a result, appellant picked up the child in what she described as a "bear hug" and dragged him from the residence in order to get him into her car. Although appellant admitted that she pushed Ms. Pykus away from her car, she denied ever grabbing her arms.
At the conclusion of the bench trial, the court immediately rendered its decision on the record and found appellant guilty of assault. After the finding of guilt, appellant was sentenced to a suspended sixty-day sentence on the condition that she successfully complete two years of supervised probation. Appellant was further ordered to pay a fine of $250, remit herself to anger management counseling, and not have contact with the victim or her family members.
On appeal, appellant now challenges the trial court's decision, and assigns the following errors for our review:
 "[1.] The trial court failed to apply the correct standard of proof in reaching its verdict[.]
 "[2.] The appellant did not receive effective assistance of counsel[.]"
 Under the first assignment of error, appellant claims that the trial court failed to apply the correct standard of proof in reaching its verdict. In setting forth this contention, appellant argues that the trial court did not comply with the standard set forth in R.C. 2901.05(A) because the court failed to determine whether the case presented by the state was proven beyond a reasonable doubt. According to appellant, the trial court failed to apply this standard, and instead, simply concluded that the state's version was more reasonable.[3]
Appellant takes issue with a portion of the trial court's decision in which the court made the following determination:
 "Now, lastly, I do not feel, that under the circumstances, the version that's being advanced by Miss Smith is the more reasonable version. I don't see it being reasonable at all. I see the complainant's version of the matter as being the most reasonable." (Emphasis added.)
 R.C. 2901.05 defines the burden of proof and the standard of reasonable doubt as follows:
 "(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. * * *
" * * *
 "(D) `Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. `Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."
 Although the instant matter involved a bench trial, the state is still required to prove all the essential elements of the crime alleged beyond a reasonable doubt. In turn, the trier of fact considers whether the state has met its burden of proving each of the essential elements beyond a reasonable doubt. R.C. 2901.05.
In the present matter, appellant elected to have a bench trial. "A reviewing court must presume that the trial court [as the trier of fact] applied the law correctly." State v. Coombs (1985), 18 Ohio St.3d 123,125. See, also, In re Watson (1989), 47 Ohio St.3d 86, 91; State v.Eubank (1979), 60 Ohio St.2d 183, 187; E. Cleveland v. Odetellah (1993),91 Ohio App.3d 787, 794. This presumption is violated when the record clearly demonstrates that the trial court did not understand the law.Coombs at 794; State v. Knighten (Dec. 17, 1999), Lucas App. No. L-97-1449, unreported, at 4, 1999 WL 1203756; State v. Chertkov (July 19, 1995), Medina App. No. 2389-M, unreported, at 1, 1995 WL 434380. Thus, on appeal from a bench trial in a criminal case, the trial court is presumed to know the law. Odetellah at 794.
Upon consideration, there is no indication from the trial court's opinion to support the view that the court did not apply the standard promulgated in R.C. 2901.05(A) and (D), or that the court did not understand the law. Further, we determine that the statement made by the trial court concerning the reasonableness of appellant's and Ms. Pykus' version of events seems to indicate that the court was merely weighing the credibility of the witnesses, not dictating the standard of proof applied in reaching its verdict. In other words, the statement reflected the trial court's determination that it found Ms. Pykus' testimony to be more credible than appellant's testimony. For these reasons, appellant's first assignment of error is meritless.
In the second assignment of error, appellant claims that she was denied effective assistance of counsel when her trial counsel failed to raise an objection to the allegedly prejudicial testimony given by Ms. Sidley at trial.
Both the Supreme Court of Ohio and this court have adopted a basic test to determine whether an accused has received ineffective assistance of counsel:
 "`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. DiMeolo (Sept. 30, 1992), Ashtabula App. No. 91-A-1680, unreported, at 3, 1992 WL 267379, quoting Strickland v. Washington (1984), 466 U.S. 668, 687. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
 On the issue of counsel's ineffectiveness, the defendant bears the burden of proof since in Ohio, every properly licensed attorney is presumed to be competent. State v. Smith (1985), 17 Ohio St.3d 98, 100. To overcome this presumption, the defendant must demonstrate that "the actions of his attorney did not fall within a range of reasonable assistance." State v. Henderson (Sept. 29, 2000), Trumbull App. No. 99-T-0001, unreported, at 8, 2000 WL 1459858. See, also, State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, at 35, 1996 Ohio App. LEXIS 5807.
In the case at bar, appellant maintains that defense counsel should have objected to certain prejudicial testimony because it allowed a witness to comment on appellant's intent. Specifically, appellant challenges the following testimony:
 "Q. [by prosecuting attorney] So, when she, your daughter was pushed up against the door, was there, was that deliberate?
 "A. [by Ms. Sidley] Definitely was from Kathy [appellant], yeah, deliberate, and that must of hurt pretty bad, too."
 Evid.R. 701 governs opinion testimony by lay witnesses:
 "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." See, also, State v. Kehoe (1999), 133 Ohio App.3d 591, 602-603; State v. Holland (Dec. 17, 1999), Portage App. No. 98-P-0066, unreported, at 5, 1999 WL 1313665.
 Ms. Sidley's testimony revealed that she believed appellant acted deliberately when she pushed her daughter, Ms. Pykus, against the door. It is the characterization of appellant's actions as deliberate to which appellant now objects. We would agree that without more, such a conclusion would be objectionable as being beyond a lay opinion. Here, however, a foundation was laid to support this opinion as Ms. Sidley testified and described with particularity the altercation between her daughter and appellant:
 "A. [by Ms. Sidley] * * * [A]t the doorway there, that's when Kathy [appellant] shoved Linda into the door casing and then from that point to the car, she was dragging her, digging her arms all up and down her arms, and then at the car, she shoved Linda up against the car door and mirror.
"* * *
 "Q. [by the prosecuting attorney] Could you describe * * * [the victim's injuries] for us? Could you tell us what they looked like?
"A. They're dug marks from nails.
"Q. And on both of her arms?
 "A. Especially the one arm was worse, you know, but she had to go to emergency right after that."
 Because the record indicates that Ms. Sidley had firsthand knowledge of appellant's conduct as she observed the entire altercation, the statement regarding appellant's intent was rationally based upon her perception. Ms. Sidley's rational inference as to whether appellant acted in a deliberate manner was gleaned from her personal observations of appellant. See, e.g., Kehoe at 612 (holding that it was proper for a police officer to give lay opinion testimony under Evid.R. 701 that he interpreted defendant's actions as demonstrating an intent to kill based on his observations at the time); State v. Crenshaw (June 4, 1992), Cuyahoga App. No. 60671, unreported, at 1-2, 1992 WL 126037 (holding that in a drug trafficking case it was proper for a police officer to testify based on his observations and experience that defendant possessed crack cocaine for purposes of selling the drugs).
Finally, even if Ms. Sidley's observation regarding deliberateness were somehow construed to be error, at worst, it would be harmless error. Ms. Sidley's overall testimony, if believed, could only lead to the conclusion that appellant's actions were deliberate.
Accordingly, defense counsel did not have reasonable grounds to seek the exclusion of this allegedly prejudicial testimony as Ms. Sidley's testimony constituted lay opinion under Evid.R. 701. Appellant's second assignment of error is not well-taken.
Even assuming, arguendo, that there were reasonable grounds to object to the aforementioned testimony, this still would not change our determination that appellant was not deprived of her constitutional right to effective assistance of counsel.
R.C. 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." (Emphasis added.) "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature * * *." R.C. 2901.22(B). Thus, a person has knowledge of circumstances when he is aware that such circumstances probably exist.
In applying the above law to the present case, it appears that there was ample evidence in the record to demonstrate that appellant should have been aware that her conduct of grabbing and digging her nails into Ms. Pykus' arms and pushing Ms. Pykus into a car would probably cause a certain result, to-wit: physical harm to Ms. Pykus. Furthermore, Ms. Pykus' testimony that she sought medical treatment, experienced horrendous pain in her arms and back, and received scratch marks and bruises, which were also observed by Patrolman Johnson and Ms. Sidley, was sufficient to establish the physical harm element.
In light of this evidence, the trial court did not have to solely rely on Ms. Sidley's testimony that she believed appellant acted in a deliberate manner when determining whether appellant committed assault upon Ms. Pykus. Thus, even if defense counsel had reasonable grounds to object to Ms. Sidley's testimony, there is ample evidence to support appellant's conviction such that we cannot conclude that the exclusion of this testimony would have resulted in an acquittal.
Based on the foregoing analysis, appellant's assignments of error are without merit, and the judgment of the trial court is affirmed.
______________________________________ JUDGE JUDITH A. CHRISTLEY
O'NEILL, P.J., concurs, FORD, J., concurs with Concurring Opinion.
[1] Ms. Sidley is the victim's mother.
[2] Ms. Smith is the daughter of appellant and is the custodial parent of Joel.
[3] Because appellant did not raise any issue relating to the sufficiency or weight of the evidence concerning her conviction in her appellate brief, we will limit our analysis to whether the trial court applied the "beyond reasonable doubt standard" as set forth in R.C. 2901.05.