OPINION
Timothy Kelly appeals from his conviction of obstructing justice in which the crime committed by the person aided by the obstruction was a felony in violation of R.C. 2921.32(A)(4).
The facts underlying this appeal are set out in the State's brief and are not essentially in dispute. They are as follows.
On August 25, 2000, Brandon Feasal attempted to pass counterfeit twenty-dollar bills at Packman's IGA in North Lewisburg. The clerk at the store told a Champaign County Sheriff's deputy that Feasal had a stack of bills in his pocket that were folded once in half, in the middle, and was approximately an inch high.
Feasal was interviewed by Sgt. Chuck Stroud of the Champaign County Sheriff's Department and by Special Agent Kevin Bereda of the United States Secret Service. Feasal admitted putting the bills into circulation and was charged with the felony offense of forgery to which he entered a guilty plea. Feasal told Stroud and Bereda and also testified at appellant's trial that he told Timothy Kelly, that the cops were after Feasal because of the counterfeit bills and that he asked Kelly to hold onto the bills so that they would not be found on Feasal if he was picked up. Lauren Bosley, a clerk at the Burg One Stop, a convenience store in Mechanicsburg, testified that at approximately 2:30 on the morning of August 26, 2000, Tim Kelly came into the store and purchased cigarettes. He pulled out a wad of money and paid for the cigarettes, but Ms. Bosley noted that one of the twenty-dollar bills in Kelly's hand looked weird. Because she had been informed the day before that counterfeit money was going around, Bosley asked to look at the money. The bills Kelly had were in a wad all taken from one pocket. After inspection, she believed that the twenties were counterfeit.
Bosley testified that she told Kelly that she was going to call the police and he asked her not to call, because he did not want them to know where he received the counterfeit money. Before Kelly left, he told Bosley that he had received change for a $50 bill at the Woodstock bar. He left the money on the counter and Bosley called the Mechanicsburg police. Kelly later returned to the store and told Bosley that he had received the counterfeit money from a man in a bar who knew police were looking for him. Later that day, when interviewed by Sgt. Stroud and Agent Bereda, Kelly first told the officers that he received the counterfeit bills when he cashed a check. After the officers told him that they had already spoken to Feasal, Kelly admitted that Feasal had met him in Woodstock, gave him the bills, and told him that the cops were after him and Feasal did not want to be caught with them. Kelly admitted that he knew the money was counterfeit when Feasal gave it to him.
Tim Kelly testified that he had no problem with Lauren Bosley inspecting the twenty dollar bill because then he would really know whether the money Feasal gave him was actually fake. (Tr. 271). Kelly testified that when Lauren told him the twenty was a fake he asked her to check the rest of the money Feasal gave him. (Tr. 272).
Kelly testified that when Lauren told him he could get in trouble for having the fake money, he suggested to her that they call the police or the sheriff. (Tr. 273). Kelly said one of the girls at the store called the police and he waited there until the police arrived. (Tr. 274). Kelly admitted he did not tell the police that Brandon Feasal gave him the fake money. (Tr. 275). Kelly denied knowing that the money Feasal gave him was counterfeit. (Tr. 282). He testified as follows:
 No. I didn't know what counterfeit money looked like. I figured, you know, Champaign County? I never heard of any counterfeit money running around. Maybe in a big city but I didn't think it was, no. I figured it was just new twenties maybe that had been roughed up or whatever. They looked washed. Maybe somebody left them in a washer. I didn't know they were fake. (Tr. 283).
At the conclusion of all the evidence, Kelly requested that the court instruct the jury upon the lesser included offense of obstructing official business. (Tr. 315). The trial court denied Kelly's request and the jury returned a verdict of guilty on the charged offense.
In his first assignment, Kelly contends the jury's verdict was against the manifest weight of the evidence and was based on evidence insufficient to sustain a criminal conviction.
Kelly argues that he did not conceal any physical evidence as required by the statute defining obstruction of justice. He notes that he did not conceal the counterfeit money from the store clerk and indeed wanted the clerk to check the money to see if it was real money. Furthermore, he notes that it was he who encouraged the clerk to call the police and he waited until the police arrived and gave them a statement.
The State argues that the evidence demonstrates that Kelly knew that he was concealing counterfeit money for Brandon Feasal. The State notes that Brandon Feasal testified he asked Kelly to hold on to the $300 in twenties that he thought might be counterfeit because the "police might be after him." Feasal said he told Kelly the money might be counterfeit. (Tr. 177). The State notes that Sgt. Stroud testified that Kelly admitted getting the counterfeit money from Feasal and knowing that the money was counterfeit. (Tr. 153). He also said Kelly admitted he knew the police were looking for Feasal for passing these bills. (Tr. 154). The State notes that it was Lauren Bosley who noticed the counterfeit bill in Kelly's hand and asked to examine them with a counterfeit pen. She said she told Kelly she was going to call the police when she discovered the counterfeit money and Kelly requested that she not do so. The State also notes that Kelly gave different versions to Ms. Bosley and the police as to where he received the counterfeit money.
R.C. 2921.32(A)(4) provides:
 (A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:
(1) Harbor or conceal such other person;
 (2) Provide such other person with money, transportation, a weapon, a disguise, or other means of avoiding discovery or apprehension;
 (3) Warn such other person of impending discovery or apprehension;
 (4) Destroy or conceal physical evidence of the crime, or induce any person to withhold testimony or information or to elude legal process summoning him to testify or supply evidence;
(5) Communicate false information to any person.
 (B) Whoever violates this section is guilty of obstructing justice, a misdemeanor of the first degree. If the crime committed by the person aided is a felony, obstructing justice is a felony of the fourth degree.
(Emphasis ours).
Evidence is insufficient as a matter of law when no rational juror viewing the evidence in its best light could find that the State proved its case beyond a reasonable doubt. State v. Waddy (1992),63 Ohio St.3d 424.
The Ohio Supreme Court has contrasted sufficiency of the evidence with the following analysis of the legal concept of weight of the evidence inState v. Thompkins (1997), 78 Ohio St.3d 380.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. . . . Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 Id., at 387.
Although permitted to consider the credibility of the evidence when weighing the evidence, an appellate court must give substantial deference to determinations of credibility of witnesses by a trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "When there exist two fairly reasonable views of the evidence, we may not choose which view we prefer. Instead we must accede to the jury. . . ."State v. Gore (1999), 131 Ohio App.3d 197, 201 (citing Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80).
In this case, the jury apparently found credible Lauren Bosley's testimony that it was she not Kelly who suggested that the counterfeit money be tested and it was she who suggested that the police be called. The jury also apparently accepted Sgt. Stroud's testimony that Kelly admitted keeping counterfeit money for the benefit of Brandon Feasal knowing that the police were looking for Feasal as a suspect for passing counterfeit money. There was therefore evidence which the jury could believe that Kelly, with purpose to hinder the prosecution of Feasal for the crime of counterfeiting, concealed the physical evidence of the crime (the counterfeit money).
In short, we find the evidence was not insufficient as a matter of law nor was it against the manifest weight of the evidence. The first assignment of error is overruled.
In his second assignment, Kelly argues that the trial court erred in not instructing the jury on the lesser included offense of obstructing official business which is a misdemeanor of the second degree.
R.C. 2921.31 provides:
 (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
The Committee Comment to HB 511 indicates that this section consolidates a plethora of separate sections of former law of which the gist was the hampering, impeding, obstructing, or interfering with particular public officials in certain duties.
In State v. Deem (1988), 40 Ohio St.3d 205, the Ohio Supreme Court held that an offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (State v. Kidder (1987), 32 Ohio St.3d 279, 513 N.E.2d 311, modified).
The Court in State v. Thomas (1988), 40 Ohio St.3d 213 held that even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.
Kelly argues that if he concealed physical evidence purposely as is necessary for a conviction of obstruction of justice, then he must also have purposely hampered and impeded a public official in the performance of his duties.
In State v. Gordon (1983), 9 Ohio App.3d 184, the Hamilton County Court of Appeals held that obstructing official business under R.C. 2921.31 is a lesser included offense of obstructing justice under R.C. 2921.32(A)(1). The court held that although obstructing justice does not contain the phrase "without privilege to do so," that phrase is a justifying circumstance precluding conviction and is not an element of obstructing official business.
In City of Cuyahoga Falls v. Lennis Cox (Jan. 25, 1989), Summit App. No. 13644, unreported, the Summit County Court of Appeals reached a different conclusion without reference to the earlier decision of Statev. Gordon, supra. The court found that the greater offense of obstructing justice could be committed without the lesser offense, obstructing official offense also being committed. The court noted that the obstructing justice statute does not require that the defendant's actions actually hamper or impede the process of bringing a criminal to justice.
The State argues that the second prong of the Deem test fails because a person can be convicted of obstructing justice without committing the lesser offense of obstructing official business since `privilege' is a justifying circumstance which prevents conviction of the lesser offense and privilege is not a justifying circumstance as a defense for the obstruction of justice charge.
The State also finds the argument in Cox that one can be convicted of obstruction of justice without actually impeding or obstructing a public official while the lesser charge requires such a result. We find both of the State's arguments to be persuasive. Accordingly, the trial court did not err in refusing to give the charge on the obstructing official business offense. The second assignment of error is also overruled.
The judgment of the trial court is Affirmed.
YOUNG, J., concurs. GRADY, J., concurring:
I agree that the lesser included offense instruction on obstructing official business, R.C. 2921.31, was not warranted, but not because the three-prong test in State v. Deem (1988), 40 Ohio St.3d 205, precluded it. Unlike the circumstance to which the Deem test applies, the additional "elements" are in the lesser offense, not the greater offense that was charged, obstructing justice. R.C. 2921.32(A)(4). On that basis, the lesser offense is included in the greater. However, on this record, defendant-appellant could not have been acquitted of the greater offense but convicted of the lesser offense, which precludes an instruction on the lesser included offense per State v. Thomas (1988),40 Ohio St.3d 13.