CITY OF MIDDLETOWN, Appellee,

v.

HOLLON, Appellant.

[Cite as *Middletown v. Hollon,* 156 Ohio App.3d 565, 2004-Ohio-1502.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2003–04–083.

Decided March 29, 2004.

Bruce Fassler, Middletown Prosecuting Attorney, for appellee.

Patrick A. Binns, for appellant.

POWELL, Judge.

{¶ 1} Defendant-appellant, Frank Hollon, appeals from his convictions in Middletown Municipal Court for disorderly conduct, obstructing official business, and resisting arrest. We affirm appellant's convictions for disorderly conduct and resisting arrest but reverse appellant's conviction for obstructing official business.

{¶ 2} On December 11, 2002, Officer Quick of the Middletown Police Department was dispatched to appellant's neighborhood due to reports that two dogs were running loose. Upon arriving at the scene, Officer Quick observed two large dogs "tearing up the trash" at a private residence across the street from

appellant's home. Appellant's neighbor advised Officer Quick that the dogs belonged to appellant.

{¶ 3} Officer Quick knocked on appellant's door. Through the storm door, Officer Quick could see appellant sleeping on the couch. After Officer Quick had knocked several times, appellant arose from the couch and walked toward the door. On his way to the door, appellant tripped and fell over a recliner. Appellant spoke to Officer Quick and told him that he was the owner of the dogs. Officer Quick smelled alcohol on appellant's breath.

{¶ 4} Officer Quick then asked appellant for identification so he could issue a citation and summons for "animals running at large," an offense under the Middletown City Ordinances ("MCO"). Appellant initially handed Officer Quick his membership card to the Eagles Club. Officer Quick subsequently asked appellant for a driver's license or other identification that displayed a Social Security number. After looking in his pockets and his wallet, appellant told Officer Quick that he was not going to give him any further identification. Officer Quick then arrested appellant for obstructing official business. When Officer Quick attempted to handcuff appellant, appellant resisted. After a brief struggle, Officer Quick was able to handcuff appellant.

{¶ 5} When Officer Quick attempted to escort appellant to his cruiser, appellant "push[ed] against" him and "kicked at [him]." When they reached the sidewalk in front of appellant's house, appellant "dead-weighted," falling to the ground and refusing to walk any farther. Officer Quick believed that appellant was intoxicated. When Officer Quick attempted to drag appellant to the cruiser, appellant wrapped his legs around a fence post. Appellant kicked Officer Quick when Officer Quick attempted to pry appellant's legs from the post. Officer Quick then called additional officers to the scene.

{¶ 6} Officer Allen, Officer Wilcox, and Lieutenant Reiring soon arrived. When appellant continued to resist the officers' efforts to place him in Officer Quick's cruiser, one of the officers maced appellant. Though appellant continued to struggle, the officers were eventually able to place appellant in Officer Quick's cruiser. According to Officer Allen, once in the cruiser, appellant began to kick the cruiser's windows.

{¶ 7} Lieutenant Reiring then decided that the officers should place appellant in the cruiser of Officers Allen and Wilcox, so that two officers could transport appellant to the police station. The officers removed appellant from Officer Quick's cruiser and attempted to handcuff appellant with his hands behind him, rather than in front as they were currently located. When appellant resisted, the officers took appellant to the ground. Appellant continued to struggle, saying that he was not going to jail. According to Officer Allen, appellant cursed at the officers and spit at them. The officers then used hand and knee strikes to

subdue appellant. The officers successfully handcuffed appellant with his hands behind him, placed him in the cruiser, and transported him to the police station.

{¶ 8} Appellant was charged with disorderly conduct in violation of MCO 648.04(b)(1), obstructing official business in violation of MCO 606.14, resisting arrest in violation of MCO 606.16, and two counts of animals running at large in violation of MCO 618.01. The obstructing-official-business charge and the resisting-arrest charge were second-degree misdemeanors. The disorderly conduct charge and the animals-running-at-large charges were minor misdemeanors.

{¶ 9} Appellant's trial was held in municipal court in February 2003. Officers Quick and Allen testified for the city. At the close of the city's case, appellant made a Crim.R. 29 motion as to the obstructing official business, disorderly conduct, and resisting arrest charges, which the municipal court denied. Appellant then took the stand. Appellant testified that he did not have a clear recollection of the night in question. According to appellant, he drank four beers at the Eagles lodge that evening. Appellant testified that he tried to comply with Officer Quick's request for identification but could not because his license was at the Bureau of Motor Vehicles.

{¶ 10} The municipal court convicted appellant on all charges. The court sentenced appellant to 30 days in jail and imposed a $100 fine for the resisting arrest conviction, crediting appellant for one day served and suspending the other 29 days. The court imposed an identical sentence for the obstructing official business conviction. Those jail sentences were suspended on the condition that appellant not reappear in court and that he complete one year of probation. The court imposed a $100 fine and court costs for the disorderly conduct conviction. For each of the two animals running at large convictions, the court imposed a $25 fine and court costs.

{¶ 11} Appellant now appeals from his convictions for disorderly conduct, obstructing official business, and resisting arrest, assigning three errors.

{¶ 12} Assignment of Error No. 1:

{¶ 13} "The trial court erred in failing to grant defendant appellant's motion to dismiss at the conclusion of the city's case and then finding defendant guilty of disorderly conduct, to wit: public intoxication."

{¶ 14} In this assignment of error, appellant argues that there was insufficient evidence to convict him of disorderly conduct. Specifically, appellant argues that the city did not prove he was "in a public place or in the presence of two or more persons" at the time of the alleged conduct.

{¶ 15} When an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses upon the adequacy of the

evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The court is to examine the evidence presented at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965.

{¶ 16} MCO 648.04(b), which was the basis for appellant's disorderly conduct conviction, provides as follows:

{¶ 17} "No person while voluntarily intoxicated shall do either of the following:

{¶ 18} "(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if he or she were not intoxicated, should know is likely to have such effect on others[.]

{¶ 19} "Whoever violates this section is guilty of disorderly conduct." MCO 648.04(e).

{¶ 20} It is clear from the record that appellant engaged in conduct likely to cause inconvenience or annoyance to the officers and that appellant would have known the likely effect of his conduct if he were not intoxicated. We also find that there was sufficient evidence from which the trier of fact could infer voluntary intoxication. Appellant does not contest those elements of the offense. However, appellant does argue that he was not "in a public place or in the presence of two or more persons."

{¶ 21} We find no support for appellant's argument in the record. After reviewing the trial transcript, we find it clear that appellant was in the presence of Officers Quick, Allen, and Wilcox, and Lieutenant Reiring when he engaged in the prohibited conduct. The testimony of Officers Quick and Allen confirms that fact. Therefore, there was sufficient evidence presented at trial for a rational trier of fact to convict appellant of disorderly conduct.

{¶ 22} In this assignment of error, appellant also argues that he could not be arrested for disorderly conduct because that charge was a minor misdemeanor. However, the legality of appellant's arrest is not relevant to whether there was sufficient evidence for a disorderly conduct conviction. Regardless, Officer Quick did not arrest appellant for disorderly conduct. Officer Quick testified at trial that he arrested appellant for the obstructing-official-business charge. The legality of that arrest will be addressed in appellant's third assignment of error regarding his resisting-arrest conviction.

{¶ 23} Accordingly, we overrule appellant's first assignment of error because there was sufficient evidence in the record to support a conviction for disorderly conduct.

{¶ 24} Assignment of Error No. 2:

{¶ 25} "The court erred in failing to grant his Rule 29 motion to acquit based on the testimony presented for his obstructing official business charge, and subsequently finding the appellant guilty of the charge."

{¶ 26} In this assignment of error, appellant argues that there was insufficient evidence to convict him of obstructing official business. Specifically, appellant argues that his conduct in refusing to provide further identification was insufficient to sustain the conviction. Appellant argues that "doing nothing or refusing to cooperate with law enforcement" is not a violation of the relevant ordinance.

{¶ 27} MCO 606.14 provides as follows:

{¶ 28} "(a) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 29} "(b) Whoever violates this section is guilty of obstructing official business."

{¶ 30} This court has stated that "one cannot be guilty of obstructing official business by doing nothing." *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942 (construing an identically worded Hamilton city ordinance provision). In that case, this court held that a defendant's refusal to pay a fine or sign an agreement to pay the fine after being adjudicated guilty of a traffic offense did not constitute obstructing official business. This court found that the ordinance required a defendant "to do something" in order to be found in violation. Id.

{¶ 31} The court in *Hamm* expressly agreed with *Columbus v. Michel* (1978), 55 Ohio App.2d 46, 9 O.O.3d 207, 378 N.E.2d 1077, and its holding that "the mere failure of a person to respond to an officer's request is not in violation of the ordinance." Id. at syllabus. In *Michel,* the court found that the defendant's refusal to open the door to his home at the request of police officers investigating a domestic disturbance did not constitute an act sufficient for an obstructing official business conviction. Id., 55 Ohio App.2d at 48, 9 O.O.3d 207, 378 N.E.2d 1077. The court stated that "[t]he legislative body has not seen fit to make an omission to act a crime." Id.

{¶ 32} The holding of *Hamm* has been followed by several courts of appeals. In *State v. McCrone* (1989), 63 Ohio App.3d 831, 835, 580 N.E.2d 468, the court

held that a defendant's refusal to provide his driver's license to an officer upon request did not constitute obstructing official business. The officer had stopped an automobile in which defendant and several others were travelling to question them regarding a recent burglary. In *Cleveland v. Corrai* (1990), 70 Ohio App.3d 679, 682–683, 591 N.E.2d 1325, the court held that the defendant's failure to cooperate with police during the execution of a search warrant did not constitute obstructing official business. See, also, *State v. Muldrow* (M.C.1983), 10 Ohio Misc.2d 11, 12, 10 OBR 164, 460 N.E.2d 1177 (defendant did not obstruct official business by refusing to be fingerprinted as part of police identification procedure).

{¶ 33} This court recently stated the following: "Although simply refusing to provide one's information to a police officer may not constitute obstruction of official business, when one takes overt acts to impede or obstruct the officer's investigation or business, one may be found guilty of obstructing official business." *State v. Merz* (July 31, 2000), Butler App. No. CA97–05–108, 2000 WL 1051837, citing *State v. Collins* (1993), 88 Ohio App.3d 291, 293–294, 623 N.E.2d 1269.

{¶ 34} MCO 606.14 prohibits "acts" that hamper or impede a public official's performance of that public official's duties. The record shows that the basis for appellant's obstructing official business charge and conviction was not an overt act but rather appellant's refusal to provide Officer Quick with his driver's license. Because appellant did not commit an "act" that obstructed Officer Quick from performing his duties, we must reverse appellant's conviction for obstructing official business. See *Hamm*, 33 Ohio App.3d at 176, 514 N.E.2d 942. Appellant's conduct "does not constitute affirmative action such as is contemplated by the * * * ordinance." Id. Accordingly, appellant's second assignment of error is sustained.

{¶ 35} Assignment of Error No. 3:

{¶ 36} "The trial court erred to the prejudice of the defendant-appellant by refusing to grant the motion of the defendant to dismiss the charge of resisting arrest at the close of the city's case and subsequently finding the defendant guilty of resisting arrest."

{¶ 37} In this assignment of error, appellant argues that there was insufficient evidence before the municipal court to convict him of resisting arrest. Appellant argues that because his initial arrest for obstructing official business was unlawful, he could not be found guilty of resisting that unlawful arrest.

{¶ 38} MCO 606.16 provides as follows:

{¶ 39} "(a) No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself, herself or another.

{¶ 40} "* * *

{¶ 41} "(d) Whoever violates this section is guilty of resisting arrest."

{¶ 42} It is clear that appellant "recklessly or by force" resisted his arrest for obstructing official business. However, the crime of resisting arrest as defined in the ordinance and in R.C. 2921.33(A) includes, as an essential element, a lawful arrest. See *State v. Miller* (1990), 70 Ohio App.3d 727, 730, 591 N.E.2d 1355. Therefore, appellant could be convicted of resisting arrest only if his underlying arrest was lawful. In order for appellant's arrest to be lawful, Officer Quick must have had, at the time of the arrest, probable cause to believe that appellant had committed or was committing a crime. *N. Ridgeville v. Reichbaum* (1996), 112 Ohio App.3d 79, 85, 677 N.E.2d 1245, citing *United States v. Santana* (1976), 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300.

{¶ 43} In sustaining appellant's second assignment of error, we determined that there was insufficient evidence to support an obstructing-official-business conviction. However, that determination does not mandate a finding that Officer Quick's arrest of appellant for obstructing official business was unlawful. Officer Quick could still have had probable cause to believe that appellant was guilty of obstructing official business, though there was insufficient evidence to prove that conclusion beyond a reasonable doubt at trial. See *State v. Sansalone* (1991), 71 Ohio App.3d 284, 286, 593 N.E.2d 390. Additionally, Officer Quick's arrest of appellant would have been lawful if, at the time of the arrest, Officer Quick had probable cause to believe appellant committed the offense of "animals running at large," provided that offense was an arrestable offense. See *Driebel v. Milwaukee* (C.A.7, 2002), 298 F.3d 622, 644 (arrest may be justified on the basis of offense other than offense for which arrest was made where two offenses are closely related or based on same set of facts); see, also, *Sheehy v. Town of Plymouth* (C.A.1, 1999), 191 F.3d 15, 19; *Mentor–on–the–Lake v. Roberts* (Dec. 29, 1989), Lake App. No. 88–L–13–168, 1989 WL 157244.

{¶ 44} Appellant was charged with and convicted of two counts of "animals running at large" in violation of MCO 618.01. That section provides that "[a] person who is the owner or has charge of any animal shall not permit it to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land, or permit them to go upon any private yard, lot, or enclosure without the consent of the owner of the yard, lot, or enclosure." MCO 618.01(a).

{¶ 45} The record shows that, at the time of the arrest, Officer Quick had probable cause to believe that appellant committed the offense of "animals running at large." On the day in question, Officer Quick responded to a call indicating that two dogs were running loose. Upon arriving at the scene, Officer Quick observed two dogs "tearing up the trash" at a home across the street from

appellant's address. Appellant's neighbor stated that the dogs belonged to appellant. Appellant confirmed the neighbor's statement when Officer Quick spoke to him. Officer Quick arrested appellant shortly thereafter. Accordingly, at the time of the arrest, Officer Quick had probable cause to believe that appellant had violated MCO 618.01(a).

{¶ 46} In order to establish that appellant's arrest was lawful, the state must not only show that there was probable cause to believe that an offense was committed, but also that the offense was one for which appellant could be arrested. *Garfield Hts. v. Simpson* (1992), 82 Ohio App.3d 286, 291, 611 N.E.2d 892. Therefore, the "animals running at large" offense must be an arrestable offense for Officer Quick's arrest to have been lawful.

{¶ 47} The municipal court's judgment entry indicates that it convicted appellant of two minor misdemeanor counts of "animals running at large." R.C. 2935.26(A) states a general rule that an officer shall not arrest a person for committing a minor misdemeanor, "but shall issue a citation." However, R.C. 2935.26(A) provides four exceptions to this rule, one of which is that an officer can arrest a person for committing a minor misdemeanor when "[t]he offender cannot or will not offer satisfactory evidence of his identity." R.C. 2935.26(A)(2).

{¶ 48} After reviewing the record, we find that "animals running at large" was, under the circumstances of this case, an offense for which appellant could have been arrested. The record shows that appellant would "not offer satisfactory evidence of his identity." R.C. 2935.26(A)(2). Specifically, appellant refused to provide Officer Quick with proper identification so that Officer Quick could issue a citation and summons. Therefore, Officer Quick could lawfully arrest appellant.[1]

{¶ 49} As we previously noted, it is clear from the record that appellant "recklessly or by force" resisted Officer Quick's attempts to arrest him. Additionally, given that Officer Quick had probable cause to believe that appellant committed an "animals running at large" violation, and that the exception in R.C. 2935.26(A)(2) applies, Officer Quick's arrest of appellant was lawful. Therefore, there was sufficient evidence to convict appellant of resisting arrest in violation of MCO 606.16. Appellant's third assignment of error is overruled.

---

1.  We note that though appellant was convicted of two minor misdemeanor counts of "animals running at large," MCO 618.01 states that the offense is a fourth-degree misdemeanor. Therefore, regardless of R.C. 2935.26(A), Officer Quick could have arrested appellant because he had probable cause to believe that appellant committed this fourth-degree misdemeanor offense. See R.C. 2935.03(A).

{¶ 50} Accordingly, we affirm appellant's convictions for disorderly conduct and resisting arrest but reverse appellant's conviction for obstructing official business, vacating his sentence for that conviction.

{¶ 51} Judgment affirmed in part and reversed in part.

Judgment affirmed in part<br>and reversed in part.

WALSH, J., concurs.

VALEN, P.J., concurs in part and dissents in part.

VALEN, Presiding Judge, concurring in part and dissenting in part.

{¶ 52} I concur with the majority's decision affirming appellant's conviction for disorderly conduct and resisting arrest, but I cannot agree with and must dissent from the majority's analysis in reversing appellant's conviction for obstructing official business.

{¶ 53} Middletown City Ordinance 606.14 provides:

{¶ 54} "(a) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."[2]

{¶ 55} The "act" is the first prong of the ordinance and must occur before the element of "purpose" is decided. "Act" refers to the conduct of hampering or impeding lawful duties. See State v. Cobb, Montgomery App. No. 19474, 2003-Ohio-3034, 2003 WL 21360421, at ¶ 8. The "purpose" related in the ordinance is to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity. Id.

{¶ 56} Appellant specifically targeted the "act" portion of the ordinance, arguing that "doing nothing or refusing to cooperate with law enforcement" was not a violation of the ordinance. The majority apparently agrees with this argument.

{¶ 57} I write to dissent because I believe that the majority too narrowly defines the term "act," when they simply require some form of an overt act.

{¶ 58} Black's Law Dictionary, 6th Edition, defines "act" under the subsection criminal act: "* * * an omission or failure to act may constitute an act for the purpose of criminal law." Therefore, "act" could encompass overt acts or acts of omission.

---

2. MCO 606.14 is identical to R.C. 2921.33(A).

{¶ 59} Appellant's decision not to provide any other form of identification or cooperate with the police officers obviously delayed and hampered the officers in their investigation to determine whether appellant was the individual who should be issued a citation.

{¶ 60} While I find that there was an "act" of hampering or impeding lawful duties, it is a close call on whether there was the requisite "purpose." If the majority had presented an analysis finding that no purpose had been shown to prevent, obstruct, or delay by appellant's conduct, a dissent might not be necessary. However, I must respectfully dissent from the majority's decision that simply requires an overt act before it considers the rest of the language of the ordinance.