[Cite as *State v. Pierce*, 2017-Ohio-4223.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

      CASE NO. 13-16-36

    v.

URIAH L. PIERCE,

      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Tiffin-Fostoria Municipal Court
Trial Court No. CRB16-0321AB

Judgment Affirmed

Date of Decision:  June 12, 2017

APPEARANCES:

    *James M. Ruhlen* for Appellant

    *Richard H. Palau* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Uriah L. Pierce ("Pierce") appeals the judgment of the Tiffin-Fostoria Municipal Court, alleging that his convictions for obstructing official business and resisting arrest were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{¶2} On March 9, 2016, Lawrence Blackful ("Blackful")—who was in Tiffin, Ohio—had a FaceTime conversation with his father. Tr. 82-83, 97. During this conversation, Blackful was "threatening to hang himself" and had "something tied around his neck." Tr. 56, 83. The father, fearful that Blackful was going to harm himself, called the police to report that Blackful may attempt to commit suicide. *Id.* Sergeant Laverne Keefe ("Keefe") and Officer Eric Aller ("Aller") were dispatched to perform a welfare check on Blackful. Tr. 57. At roughly 3:00 a.m., the police arrived at Pierce's house, which is where Blackful was reportedly staying. Tr. 57. As Keefe and Aller approached the house, Keefe observed a lighted room in the second story of the house and heard a male screaming. *Id.* Aller knocked on the front door. Tr. 57, 98.

{¶3} Pierce opened the front door, told Aller that he was not Blackful, and said that Blackful was upstairs. Tr. 98-99. Aller then asked Pierce to go inside and get Blackful. Tr. 99. At this time, Pierce agreed to cooperate and returned

into the house to get Blackful. *Id.* While Pierce was inside the house, Aller radioed dispatch to get a physical description of Blackful. Tr. 100. Dispatch responded, informing Aller that Blackful was "[a]pproximately 5'6, 130 pounds, black hair, brown eyes, and African-American." *Id.* This description closely matched the appearance of Pierce, and the police officers began to wonder if Pierce was Blackful. Tr. 101.

{¶4} When Pierce returned to the front door several minutes later, the police asked him if he was the subject, Lawrence Blackful. *Id.* Pierce said, "No. That subject is upstairs and he doesn't want to talk to you guys." *Id.* Keefe then asked Pierce if they could go inside to speak with Blackful, but Pierce refused to let them in the house. *Id.* At this point, both Keefe and Aller believed that Pierce was, in fact, Blackful. Tr. 60, 101. At trial, Aller testified that Pierce seemed to be behaving deceptively in this interaction. Tr. 101. Keefe then asked Pierce to identify himself and explained that he needed to provide this information because the police were there to investigate a complaint. Tr. 101. Keefe informed Pierce that he could be arrested if he did not comply with the police. Tr. 72, 101.

{¶5} At this time, Pierce refused to identify himself to the police, darted into the house, and attempted to shut the door behind him. Tr. 61, 84, 101-102. Keefe reached out and stopped the door from closing. Tr. 61. Keefe and Aller pushed the door open and entered the house. Tr. 61, 102. Officer Rebecca Timm ("Timm"), who had arrived at the scene shortly after Keefe and Aller had gotten

there, saw Keefe and Aller enter the house. Tr. 84. Timm then entered into the house where Keefe and Aller were attempting to subdue Pierce. Tr. 84-85. At trial, Keefe described what happened after he entered the house, saying,

> **When I grabbed him, he fell to the ground. He tried to pull away from me. And in the process, he fell to the ground. We had a very hard time trying to control him in the way that he was moving, rolling around, pulling his arms away from us. And I just kept yelling at him, 'Quit resisting arrest. You're under arrest.'**

Tr. 61. During this altercation, Pierce was saying, "Get off me." Tr. 103. Pierce also said, "B****, don't touch me, you ain't even cute" to Timm. Tr. 62, 103.

{¶6} Timm and Aller then assisted Keefe in handcuffing Pierce. Tr. 86. After the officers had subdued Pierce, a woman came down the stairs. Tr. 63. When he saw her, Keefe pointed to Pierce and asked the woman if she could identify him. *Id*. Pierce then called out, "Don't tell them s***." *Id*. The woman, however, was unable to identify Pierce, saying she only knew him as "Squiddy." *Id*. After Pierce had been removed from the house, Blackful came downstairs at Keefe's request and identified himself. Tr. 64. The police then completed the welfare check. Tr. 87.

{¶7} On March 9, 2016, Pierce was charged with obstruction of official business in violation of R.C. 2921.31(A) and resisting arrest in violation of R.C. 2921.33(A). Doc. 1, 2. The jury trial was set for November 2, 2016. Tr. 1. At trial, Keefe, Aller, and Timm testified as to what they had witnessed on that night.

Tr. 54, 80, 95. Pierce was found guilty and sentenced on November 2, 2016. Doc. 52. On November 29, 2016, Pierce filed a notice of appeal. Doc. 56. On appeal, Pierce raises three assignments of error, which read as follow:

**First Assignment of Error**

**The record contains insufficient evidence to support appellant's conviction for obstructing official business.**

**Second Assignment of Error**

**The record contains insufficient evidence to support appellant's conviction for resisting arrest.**

**Third Assignment of Error**

**Appellant's conviction for obstructing official business and resisting arrest were both against the manifest weight of the evidence.**

We will consider these assignments of error in the order they were presented in the appellant's brief.

*First Assignment of Error*

{¶8} In this assignment of error, Pierce argues that his conviction for obstructing official business is not supported by sufficient evidence. In particular, Pierce asserts that the prosecution did not present evidence that proves he performed an affirmative act that "hamper[ed] or impede[d] a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). Pierce argues that refusing to identify himself is an omission and not an act within the meaning of R.C. 2921.31(A). On appeal, the State points to Pierce's refusal to

identify himself to the police and his flight into the house as acts that satisfy this element. Pierce, however, claims that he was within his rights in choosing not to identify himself and in returning into his home.

Standard of Review

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Walters*, 3d Dist. Defiance No. 4-16-17, 2017-Ohio-793, ¶ 6, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), fn. 4. Under the sufficiency of the evidence standard, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Potts*, 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 12 (3d Dist.), quoting *Jenks* at paragraph two of the syllabus.

{¶10} "Whether there is legally sufficient evidence to sustain a verdict is a question of law." *State v. Schaeffer*, 2015-Ohio-3531, 41 N.E.3d 813, ¶ 14 (3d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). For this reason, "[i]n deciding if the evidence was sufficient, we neither resolve

evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *Potts* at ¶ 12, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C–120570 and C–120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.).

{¶11} R.C. 2921.31(A) defines the crime of obstructing official business and reads as follows:

> **No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.**

R.C. 2921.31(A). Thus, to obtain a conviction for obstructing official business, the State had to provide evidence for five essential elements:

> **(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; ([4]) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so. R.C. 2921.31.**

*State v. Dice*, 3d Dist. Marion No. 9-04-41, 2005-Ohio-2505, ¶ 19, citing R.C. 2921.31(A). We now turn to the record to determine whether Pierce's conviction was supported by sufficient evidence.

## Legal Analysis

{¶12} Regarding the first element, Pierce argues that R.C. 2921.31(A) requires the defendant to have committed an affirmative act to be guilty of obstructing official business and that refusing to provide the police with his

identification upon request does not qualify as an action within the meaning of the statute. As to this particular argument, Pierce is largely correct. "Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act * * *." *State v. Crowell*, 189 Ohio App.3d 468, 2010-Ohio-4917, 938 N.E.2d 1115, ¶ 11 (2d Dist.), quoting *State v. Harrell*, 2d Dist. Montgomery No. 21736, 2007-Ohio-4550, ¶ 12. "[O]ne cannot obstruct official business by doing nothing." *Garfield Hts. v. Simpson*, 82 Ohio App.3d 286, 291, 611 N.E.2d 892, 896 (8th Dist.1992). Failure to give the police requested information is generally viewed as an omission rather than as an overt act. *State v. Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16; *State v. Justice*, 4th Dist. Pike No. 99CA631, 1999 WL 1125113, 5 (Nov. 16, 1999); *Cleveland Hts. v. Lewis*, 187 Ohio App.3d 786, 2010-Ohio-2208, 933 N.E.2d 1146, ¶ 37 (8th Dist.); *State v. McCrone*, 63 Ohio App.3d 831, 835, 580 N.E.2d 468, 470-471, (9th Dist.1989); *Middletown v. Hollon*, 156 Ohio App.3d 565, 2004-Ohio-1502, 807 N.E.2d 945, ¶ 33-34 (12th Dist.).

{¶13} However, Pierce's conduct went beyond choosing not to answer the police's questions and moved into the realm of affirmative action when he decided to flee into the house in the midst of a police investigation and attempted to close the door on the officers.

> **[W]hile Ohio courts have concluded that the mere refusal to answer questions does not constitute an 'act,' it has been further held that where an individual 'also takes affirmative actions to**

**hamper or impede the police from finding out his or her identity, the defendant may be guilty of obstructing official business.'**

*State v. Brickner-Latham*, 3d Dist. Seneca No. 13-05-26, 2006-Ohio-609, ¶ 27. *See State v. Faber*, 3d Dist. Seneca No. 13-15-01, 2015-Ohio-3720, ¶ 31. "Courts have found evidence sufficient to sustain convictions for obstructing official business where a defendant fled from an officer's lawful request for an investigatory detention." *State v. Watson*, 3d Dist. Union No. 14-09-01, 2009-Ohio-6713, ¶ 35, citing *State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148, 905 N.E.2d 1259 (4th Dist.); *State v. Dunfee*, 4th Dist. Athens No. 02CA37, 2003-Ohio-5970.

{¶14} In this case, the police were attempting to make contact with Blackful for the purpose of performing a welfare check. Once they received a description of Blackful from dispatch, the police had a reasonable, articulable suspicion that Pierce was Blackful because Pierce closely fit the description they received. Tr. 60, 86, 100. *See State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 24 (10th Dist.). Based on this reasonable suspicion, Keefe sought additional information regarding Pierce's identity for the purpose of confirming whether they had successfully made contact with the subject of their welfare check. Tr. 67, 70-71. Since Pierce's identity appeared to be essential to this police investigation, Keefe warned Pierce that "if he didn't identify himself, he was going to be arrested * * *." Tr. 72. At this time, Pierce was being lawfully

detained by the police and had notice of his detention through Keefe's warning. Tr. 70-72. All three police officers testified at trial that Pierce, after he had heard Keefe's warning, fled into the house, attempted to shut the door, struggled to escape from police custody, and ordered another person in the house not to give the police information about his identity. This testimony is sufficient to provide evidentiary support for the affirmative act element of this offense.

{¶15} For the second element, Pierce's actions demonstrate an intent to prevent the police from obtaining the information that was necessary to conduct a welfare check on Blackful. All three officers testified that Pierce "darted" into the house and attempted to shut the front door. Tr. 60, 84, 102-103. Keefe also testified that Pierce told another person in the house not to give the police any information about his identity. Tr. 63. *See Dice, supra*, at ¶ 22. Regarding the third element, Pierce's actions did impede the police investigation as the officers had to subdue Pierce and undertake additional investigatory steps to perform the welfare check on Blackful. Tr. 61-62, 63-64. *See State v. Davis*, 140 Ohio App.3d 751, 753, 749 N.E.2d 322, 323-324 (1st Dist.2000). For the fourth element, the actions of the police were unquestionably in furtherance of a lawful duty as all three officers were on patrol and were responding to a complaint relayed to them by dispatch at the time of this incident. Tr. 56-57, 82-82, 99. Fifth, there is no information in the record and no allegation on appeal that

suggests Pierce was privileged to act in this manner. *Brickner-Latham, supra,* at ¶ 28.

{¶16} Since the State provided evidence for each of the essential elements of this crime that, if believed, could persuade a reasonable trier of fact that Pierce was guilty beyond a reasonable doubt, Pierce's conviction for obstructing official business is supported by sufficient evidence. His first assignment of error is, therefore, overruled.

*Second Assignment of Error*

{¶17} Here, Pierce claims that his conviction for resisting arrest is not supported by sufficient evidence. He focuses this argument on the lawfulness of his arrest. In this case, Pierce was ostensibly arrested for committing the offense of obstructing official business. Under his first assignment of error, Pierce asserts that he did not commit the crime of obstructing official business by failing to identify himself or by fleeing into his home. Pursuant to this argument, Pierce challenges the lawfulness of his arrest on the grounds that no reasonable basis existed for believing that he had committed the crime of obstructing official business.

Standard of Review

{¶18} We here reincorporate the general standard of review that governs sufficiency of the evidence challenges as set forth under the first assignment of error above. We add to this general standard the essential elements for the

-11-

conviction challenged under this assignment of error, which is for the offense of resisting arrest. Under R.C. 2921.33(A), the State had to prove beyond a reasonable doubt that Pierce "[1] recklessly or by force, [2] * * * resist[ed] or interfere[d] with [3] a lawful arrest * * *. R.C. 2921.33(A). We now turn to the record to determine whether Pierce's conviction for resisting arrest was supported by sufficient evidence.

Legal Analysis

{¶19} For the first element, Pierce employed force against the police. "'Force' is defined as any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." *Dice, supra*, at ¶ 27, quoting R.C. 2901.01(1). At trial, all three officers testified that Pierce forcibly tried to prevent Keefe from entering the house, struggled with all three officers as they arrested him, and attempted to break free from their grasp. Tr. 61-62, 84-86, 102-103.

{¶20} As to the second element, Pierce used force for the purpose of resisting the police officers' efforts to arrest him. Keefe testified that he told Pierce that he was under arrest and repeatedly instructed Pierce to stop resisting the police. Tr. 61-62. The three officers also testified that Pierce, in spite of these warnings, attempted to evade the police and break free from the officers when they were trying to handcuff him. Tr. 62, 84, 102-103. *Compare State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843, ¶ 18.

{¶21} Third, "[a]n arrest is 'lawful' if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed." *State v. Blair*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, ¶ 8, citing *State v. Hurst,* 1st Dist. Hamilton No. C–880706, 1989 WL 140010 (Nov. 22, 1989). *See State v. Sansalone*, 71 Ohio App.3d 284, 285–286, 593 N.E.2d 390 (1st Dist.1991); *City of Parma Heights v. Kaplan*, 8th Dist. Cuyahoga No. 55108, 1989 WL 30584 (Mar. 30, 1989). The police had detained Pierce because they had a reasonable, articulable suspicion that he was the subject of their welfare check. Tr. 100. Keefe had informed Pierce that he would be arrested if he failed to comply with their investigation, giving Pierce notice that he was being detained. Tr. 72. Since Pierce was lawfully detained, Pierce committed the offense of obstructing official business when he fled from their presence. Thus, the police had reasonable cause to believe that Pierce was committing a crime and, therefore, had legal grounds to arrest him. Tr. 69-74.

{¶22} Since the prosecution presented evidence at trial for each of these essential elements, Pierce's conviction for resisting arrest is supported by sufficient evidence. Thus, his second assignment of error is overruled.

*Third Assignment of Error*

{¶23} In this assignment of error, Pierce argues that both of his convictions were against the manifest weight of the evidence. Here, Pierce largely reiterates the arguments put forward under his sufficiency of the evidence challenges. He

-13-

contends that the manifest weight of the evidence does not support the finding that he committed the crime of obstructing official business because refusing to provide identification to the police is an omission and is not an affirmative act as required by R.C. 2921.31(A). Based on this argument, he then asserts that a finding that is consistent with the manifest weight of the evidence on his obstruction of official business charge deprives his arrest of a reasonable basis, making his arrest unlawful and his conviction for resisting arrest also against the manifest weight of the evidence.

Standard of Review

{¶24} "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *State v. Plott*, 2017-Ohio-38, --- N.E.3d ---, ¶ 73 (3d Dist.), citing *Thompkins*, *supra*. In the manifest weight analysis, "the appellate court sits as a 'thirteenth juror.'" *Thompkins, supra,* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661 (1982).

> **The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.**

*State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1983). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012–Ohio–5233, 982 N.E.2d 111, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

{¶25} In the sufficiency of the evidence analysis, we reviewed the evidence presented by the prosecution in support of each of the essential elements of both offenses. We here reincorporate the evidence presented as part of that earlier analysis. Since the appellant argues again that his refusal to identify himself was not an act but an omission, we reiterate our previous determination that Pierce's conduct included several affirmative actions that impeded the police investigation. Thus, the jurors, in finding Pierce guilty of obstructing official business, did not reach a verdict that was against the manifest weight of the evidence. Since Pierce committed the offense of obstructing official business in the presence of the police, the police had reasonable grounds to arrest him, making this arrest lawful. Thus, the jurors did not enter a verdict against the manifest weight of the evidence when they found him guilty of the offense of resisting arrest.

{¶26} As we examine the testimony presented at trial, we also note that the different accounts provided by the three police officers were consistent. The material facts contained in the testimony of each of these officers were

-15-

corroborated by the testimony of the other officers. Further, we do not see any evidence in the record that the jury lost its way and committed a miscarriage of justice by returning a verdict against the manifest weight of the evidence. Since neither of Pierce's convictions were against the manifest weight of the evidence, his third assignment of error is overruled.

*Conclusion*

{¶27} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Tiffin-Fostoria Municipal Court is affirmed.

***Judgment Affirmed***

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/hls**