[Cite as *State v. Buttram*, 2020-Ohio-2709.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190034 |
| | | TRIAL NO. 18CRB-27354 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DON F. BUTTRAM, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 29, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

CROUSE, Judge.

{¶1} Defendant-appellant Don Buttram appeals his conviction for obstructing official business. For the reasons set forth below, we affirm the judgment of the trial court.

### Facts and Procedure

{¶2} On October 1, 2018, Officer Kelly Garner of the Norwood Police Department received a call to investigate a possible overdose. Garner, as well as fire and EMS units, responded to Buttram's address. Garner activated a body-worn camera upon her arrival. The body camera captured the entirety of Garner's encounter with Buttram.

{¶3} Footage from the body camera shows Garner entering Buttram's apartment, announcing her presence, and proceeding toward the bathroom. Garner testified that when she reached the bathroom doorway, she observed Buttram seated on the floor with an "uncapped, loaded syringe in his hand." Garner testified that Buttram "appeared to be ready to use the syringe. He had a belt around his arm." Garner also observed a dose of Narcan on the bathroom sink. Garner testified that she was unable to determine if Buttram had ingested the Narcan prior to her arrival.

{¶4} Garner immediately instructed Buttram to place the syringe on the floor, but he refused. After approximately four or five orders, Buttram unsteadily rose to his knees. At that point, Garner and the medics warned Buttram that if he failed to comply with Garner's orders, he would be sprayed with pepper spray. Buttram still refused to comply, and Garner administered pepper spray to Buttram's face. Garner then instructed Buttram three more times to drop the syringe, but Buttram continued to stand and walk toward her. Garner again administered pepper spray to Buttram's face, this time rendering him unable to continue forward.

**{¶5}** With Buttram temporarily incapacitated, the medics were able to grab the syringe from his hand. Garner placed the syringe in a secure container and the medics treated Buttram for a possible overdose and for contamination from the pepper spray.

**{¶6}** On October 16, 2018, Buttram was charged with one count of obstructing official business in violation of R.C. 2921.31(A). Following a bench trial, the trial court found Buttram guilty as charged and sentenced him to 90 days in jail. Buttram unsuccessfully sought to stay execution of his sentence. This timely appeal followed.

### Law and Analysis

**{¶7}** In his sole assignment of error, Buttram challenges the sufficiency and weight of the evidence supporting his conviction for obstructing official business.

### I. Sufficiency of the Evidence

**{¶8}** To determine whether a conviction is supported by sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991).

**{¶9}** Buttram was convicted of obstructing official business under R.C. 2921.31(A), which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

**{¶10}** To support a conviction for obstructing official business, the state must prove that Buttram "(1) performed an act; (2) without privilege; (3) with purpose to

3

prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re Payne*, 1st Dist. Hamilton No. C-040705, 2005-Ohio-4849, ¶ 11.

{**¶11**} Buttram claims that his conviction must be reversed for several reasons. First, Buttram argues that he did not perform an affirmative act. He asserts that he merely refused to cooperate with the officer's demands. Second, Buttram argues that he did not intend to prevent, obstruct, or delay the officer's investigation. Buttram contends that he did not possess the requisite intent where he lacked coherence and body coordination due to the ingestion of narcotics. Third, Buttram argues that his conduct did not rise to the level of hampering or impeding the officer's investigation. We consider each argument in turn.

a. Affirmative Act

{**¶12**} A violation of R.C. 2921.31 requires an affirmative act. *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 10 (1st Dist.). A failure or refusal to comply with a police officer's order is insufficient to support a conviction for obstructing official business. *See, e.g., State v. Crowell*, 189 Ohio App.3d 468, 2010-Ohio-4917, 938 N.E.2d 1115 (2d Dist.) (refusal to exit from one's home upon a police officer's request is not an "act"); *State v. King*, 3d Dist. Marion No. 9-06-18, 2007-Ohio-335 (refusal to disclose identifying information to an officer is not an "act"); *Middletown v. Hollon*, 156 Ohio App.3d 565, 2004-Ohio-1502, 807 N.E.2d 945 (12th Dist.) (refusal to provide officer with driver's license is not an "act"). However, the proper focus in a prosecution for obstructing official business is on the total course of the defendant's conduct, verbal and physical. *Wellman* at ¶ 12; *State v. Body*, 2018-Ohio-3395, 117 N.E.3d 1024, ¶ 22 (2d Dist.).

**{¶13}** Although Garner testified that Buttram impeded her investigation "with his refusal to place down the syringe," video footage from her body camera demonstrates that Buttram's conduct went beyond simply refusing to comply with Garner's orders. The video shows that Buttram stood up, walked toward Garner, and forced the response team to physically restrain him. Thus, viewed in the light most favorable to the state, this evidence demonstrates that Buttram performed an affirmative act and did not merely fail to obey Garner's orders.

b. <u>Intent</u>

**{¶14}** From Buttram's actions, and when considering the evidence in the light most favorable to the state, the trier of fact could reasonably conclude that Buttram acted with the purpose to prevent, obstruct, or delay Garner in performing her duties.

**{¶15}** "A person acts purposely when it is the person's specific intention to cause a certain result[.]" R.C. 2901.22(A). "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." *In re Payne*, 1st Dist. Hamilton No. C-040705, 2005-Ohio-4849, at ¶ 15. However, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." R.C. 2901.21(E).

**{¶16}** The record demonstrates that Buttram's conviction was based upon his conscious choice to act contrary to Garner's instructions. Specifically, the trial court found,

> [T]here was no evidence submitted of an overdose. There was no evidence that [Buttram] was not acting in and out of his own volition. There was no evidence that he was not communicating of his own will.

And there was no evidence that he was unconscious, that he did not understand the officer's instructions. He was communicating with them. * * * On the contrary, I think the evidence establishes that [Buttram] was conscious, choosing to behave in a way that did amount to a violation of [R.C.] 2921.31.

{¶17} We agree. The facts and circumstances suggest that Buttram did not intend to be cooperative from the outset of his encounter with Garner. The body camera footage shows a uniformed Garner entering Buttram's apartment, closely followed by the medics. Garner quickly located Buttram in the bathroom and immediately ordered him to put the syringe down. Buttram refused and instead tried to stand up, despite knowing that an officer was telling him to stop. According to Garner, "at one point he said that he wasn't going to drop it, or no, or something of that nature[.]" Garner and the medics warned Buttram that if he continued to refuse, he would be sprayed with pepper spray. Buttram still did not comply with Garner's orders and Garner twice administered pepper spray to Buttram's face before he was physically unable to continue forward. Over the course of her interaction with Buttram, Garner ordered Buttram approximately 15 times to put the syringe down.

{¶18} Under these circumstances, the nature of Buttram's conduct supports a finding that he was aware Garner was attending to the scene, yet he refused to comply and repeatedly engaged in actions contrary to Garner's orders. Thus, viewed in the light most favorable to the state, the evidence demonstrates that Buttram acted with the intent to obstruct official business.

c. Hamper or Impede

**{¶19}** To support a conviction for obstructing official business, "the state must prove that the defendant's conduct in fact hampered or impeded the public official in the performance of the official's duties." *Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, at ¶ 17. The state does not have to show that the defendant prevented the officer from performing her duties, only that he had obstructed her from doing so. *Id.* at ¶ 19.

**{¶20}** "There must be some substantial stoppage of the officer's progress before one can say [she] was hampered or impeded." *State v. Stephens*, 57 Ohio App.2d 229, 230, 387 N.E.2d 252 (1st Dist.1978). However, this court has held that no finite period of time constitutes a substantial stoppage, "be the delay * * * thirty seconds or two minutes." *Wellman* at ¶ 18. If the defendant's act had "more effect on the performance of the police than silence or a refusal to answer would have had," then the evidence supports the conviction. *State v. Gordon*, 9 Ohio App.3d 184, 187, 458 N.E.2d 1277 (1st Dist.1983).

**{¶21}** Garner testified that she responded to Buttram's apartment "to investigate a possible overdose." Garner stated that the normal procedure when handling an overdose is to ensure the safety of everybody on the scene and to render aid if a subject needs medical attention. According to Garner, it is important to act quickly because "the subject who is possibly overdosing has likelihood of death."

**{¶22}** In this case, the total interaction took approximately one minute and 40 seconds. Garner testified that during that time, she was able to evaluate Buttram for his safety and that she was able to determine that "[t]he scene, other than the fact that he holds a syringe, uncapped, loaded with an unknown substance, [was] fairly safe." However, Garner also testified that the response team could not determine if

7

Narcan had already been administered. Thus, according to Garner, "I was not fully able to assess him completely without worrying about my safety, as well as the medics on scene that were there to assist him." Notably, during the investigation, Garner twice had to take steps to protect herself due to Buttram's actions of walking toward her with an uncapped, loaded syringe in his hand.

{¶23} Under these circumstances, Buttram's conduct prevented Garner from gaining control of the situation when danger to the response team was evident. Thus, viewed in the light most favorable to the state, the evidence demonstrates that Buttram's conduct hampered or impeded Garner in the performance of her duties.

## II. Manifest Weight of the Evidence

{¶24} In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶25} Buttram's weight-of-the-evidence argument concerns the interpretation of the evidence presented at trial—i.e., the testimony of Garner and the video footage from Garner's body camera. "[W]hen evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20. Ultimately, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶26} During the bench trial, the trial court listened to the testimony of Garner and watched the video footage from Garner's body camera. After closing

arguments, the court took a brief recess to rewatch the body camera footage in its entirety. Thereafter, the court found that the state proved all of the elements beyond a reasonable doubt. Based upon our review of the record, we agree. This is not a case where the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Buttram's conviction must be reversed.

### *Conclusion*

{¶27} For the foregoing reasons, Buttram's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.