# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250648 |
|  |  | TRIAL NO. | 25/CRB/12803 |
| Plaintiff-Appellee, | : |  |  |
| vs. | : |  |  |
|  |  | *JUDGMENT ENTRY* |  |
| ISHMAEL DAVIS, | : |  |  |
| Defendant-Appellant. | : |  |  |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/5/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Davis*, 2026-Ohio-2102.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO.    C-250648
                                           TRIAL NO.     25/CRB/12803
    Plaintiff-Appellee,     :

  vs.                            :

                                           *O P I N I O N*
ISHMAEL DAVIS,                    :

    Defendant-Appellant.    :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 5, 2026


*Emily Smart Woerner*, City Solicitor, *Susan M. Zurface*, Chief Prosecuting Attorney, and *Meagan W. Myers*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Christine Y. Jones*, Assistant Public Defender, for Defendant-Appellant.

**BOCK, Judge.**

{¶1}    The trial court convicted defendant-appellant Ishmael Davis of obstructing official business based on a confrontation with police officers seeking to arrest him on open felony warrants. In a single assignment of error, he argues that his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. We affirm.

## I.  Factual and Procedural History

{¶2}    Officers Joyce and Richmond of the Cincinnati Police Department were patrolling the city in search of Davis. Joyce testified that Davis had multiple open arrest warrants for violent felony offenses. The officers knew Davis drove a distinctive, brown, rusted out, older model van with no license plate. As the officers drove on Cummins Street, they saw Davis pass by driving in the other direction. After Joyce turned his cruiser around to follow Davis, he observed Davis accelerate and seemingly take evasive measures. After briefly losing sight of the van, Joyce saw Davis pull into a long driveway and park behind a house.

{¶3}    Joyce pulled into the driveway and activated his lights and sirens. The officers exited from the cruiser and drew their firearms, issuing commands for Davis to exit from the van and show his hands. Davis complied. Joyce repeatedly ordered Davis to get on the ground. Instead, Davis lifted his shirt, turned 360 degrees, and stated he did not have any weapons. Both officers ordered Davis to face away from them and put his hands behind his back. Davis did not comply. Richmond holstered his pistol and took out his taser, and the officers advanced toward Davis.

{¶4}    Still facing the officers, Davis took several steps backward. Joyce cautioned Davis not to run and exchanged his firearm for his taser. Davis stopped backing up and repeatedly asked the officers what he had done. Joyce grabbed Davis

by the wrist. When both officers attempted to force Davis down, Davis and Joyce tumbled to the ground. The officers forced Davis onto his stomach and pinned his left arm behind his back. Davis continued to ask what he had done and held his right arm beneath him. Joyce forcibly extracted Davis's right arm and the officers applied handcuffs. Numerous other officers arrived to assist.

{¶5} The State charged Davis with obstructing official business in violation of R.C. 2921.31, a misdemeanor of the second degree. After a bench trial, the court found him guilty and sentenced him to five days in jail with credit for five days served, imposed a $100 fine, and stayed the sentence. This appeal followed.

## II. Analysis

{¶6} R.C. 2921.31, which criminalizes obstructing official business, provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." This court has distilled the essential elements to require the State to prove that the accused "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *State v. Brantley*, 2022-Ohio-597, ¶ 16 (1st Dist.).

{¶7} Davis challenges the sufficiency and weight of the evidence supporting three of these essential elements—his performance of a qualifying act, whether he acted purposefully, and whether his conduct hampered or impeded the officers.

### A. Standards of review

{¶8} In reviewing a challenge to the sufficiency of the evidence, we must

determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 2016-Ohio-8295, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9} Conversely, when reviewing a challenge to the manifest weight of the evidence, this court must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388 (1997).

## B. The evidence supports Davis's obstructing-official-business conviction

### 1. Affirmative act

{¶10} Davis asserts that he generally followed the officers' instructions by exiting from the van and showing his hands. He maintains that his refusal to respond to their commands to turn around and get on the ground cannot constitute obstructing official business. He further contends that his refusal to get on the ground was not an affirmative act.

{¶11} This court has acknowledged that "[a] failure or refusal to comply with a police officer's order is insufficient to support a conviction for obstructing official business." *State v. Buttram*, 2020-Ohio-2709, ¶ 12 (1st Dist.). Nonetheless, "the proper focus in a prosecution for obstructing official business is on the total course of the defendant's conduct, verbal and physical." *Id*. The record demonstrates that Davis's conduct went beyond passive refusal.

{¶12} The State presented Officer Richmond's body-worn-camera footage, which shows that Davis struggled against Joyce when the officer grabbed his arm. It

further shows that the two men tumbled to the ground, at which point the officers had to force Davis onto his stomach and manually extract one of his arms from beneath him to apply handcuffs. These actions by Davis constituted affirmative acts within the meaning of the obstructing-official-business statute. *See, e.g., State v. Dowell*, 2025-Ohio-2425, ¶ 10 (1st Dist.) (noting, "physically resisting an arrest to avoid the placement of handcuffs suffices as an affirmative act" for purposes of obstructing official business), *appeal accepted and consolidated with certified question*, 2025-Ohio-5079; *State v. Terry*, 2025-Ohio-1195, ¶ 15 (1st Dist.) ("[t]aking physical action to avoid an officer's attempt to effectuate an arrest, such as tucking one's wrists to avoid the placement of handcuffs, can also satisfy the affirmative act requirement"); *State v. Carrion*, 2023-Ohio-4386, ¶ 20 (1st Dist.) (defendant's acts of placing his hand on the wall, tucking his wrists, and tensing his muscles to avoid the placement of handcuffs during arrest were affirmative acts). Accordingly, the record contains sufficient, credible evidence that Davis committed affirmative acts within the meaning of the obstructing-official-business statute.

### 2. Intent

{¶13} Davis, in a single sentence, asserts that the State failed to prove he acted with intent to hamper or impede Joyce and Richmond by arguing with them. Davis's verbal protests notwithstanding, we infer the requisite intent from Davis's physically struggling against the officers to avoid being taken into custody. *See Buttram* at ¶ 17-18 (intent to obstruct official business inferred from the facts and circumstances surrounding defendant's behavior).

### 3. Hamper or impede

{¶14} Next, Davis argues that his taking a few steps backward did not hamper or impede the officers in a substantial way. This court has held that the "hamper or

impede" element requires "some substantial stoppage of the officer's progress before one can say [he] was hampered or impeded." *Buttram*, 2020-Ohio-2709, at ¶ 20 (1st Dist.), quoting *State v. Stephens*, 57 Ohio App.2d 229, 230 (1st Dist. 1978). But we have also held that "no finite period of time constitutes a substantial stoppage, 'be the delay . . . thirty seconds or two minutes.'" *Id.*, quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 18 (1st Dist.). Rather, "[i]f the defendant's act had 'more effect on the performance of the police than silence or a refusal to answer would have had,' then the evidence supports the conviction." *Id.*, quoting *State v. Gordon*, 9 Ohio App.3d 184, 187 (1st Dist. 1983).

{¶15} The officers handcuffed Davis and took him into custody approximately 60 seconds after they exited from their cruiser and began issuing commands. Viewed in total, Davis's struggling against the officers unequivocally impacted the performance of their official duties more than mere silence or refusal to answer. That the officers were able to effectuate the arrest does not negate the impact of Davis's conduct. At trial, when asked how Davis's conduct inhibited the performance of his official duties, Joyce explained his typical process for arresting someone on a violent felony warrant: Joyce activates the cruiser lights and sirens, officers exit from the vehicle and hold the suspect at gunpoint while issuing commands like "stick your hands out the window," "face away from me," "back up to the sound of my voice," and "go down to your knees," and then, if the suspect complies, they take the suspect into custody.

{¶16} That is not how events unfolded here. Rather, Davis's actions delayed the officers' ability to take him into custody using standard protocol. When asked how much delay Davis's conduct caused, Joyce testified that the typical felony arrest was not drawn out with multiple officers responding. Joyce estimated that at least ten

7

officers ended up on scene versus the typical four to six officers for a felony arrest warrant. Though the arrest was completed in approximately 60 seconds, there is no temporal requirement for substantial stoppage. *See Buttram* at ¶ 20; *see also State v. Walker*, 2025-Ohio-2982, ¶ 26 (1st Dist.) (defendant's 40-second flight from police was more than a de minimis annoyance or delay and created a substantial stoppage that hampered the police in performing their duties).

{¶17}    In sum, the record contains sufficient evidence that Davis committed affirmative acts with the intent to hamper or impede the officers in the performance of their official duties, and that his conduct in fact hampered or impeded the officers. Moreover, his conviction is not contrary to the manifest weight of the evidence.

### C.  Forfeited legal challenges

{¶18}    Davis argues that R.C. 2921.31 only applies to an individual who is not under arrest. He asserts that the legislature's inclusion of the phrase "without privilege to do so" in R.C. 2921.31(A) means the accused must be engaged in an illegal act—and not merely an affirmative act—to sustain a conviction for obstructing official business.

{¶19}    Davis did not raise these arguments before the trial court. Therefore, he has waived all but plain error. *See State v. Wilson*, 2026-Ohio-1178, ¶ 11 (1st Dist.); Crim.R. 52(B). Plain error occurs where there is an obvious defect in the proceedings that affected the outcome of the case. *Wilson* at ¶ 12.

{¶20}    Despite not having raised these arguments below, Davis did not present a plain-error argument in his appellate brief. This court has repeatedly held that we "need not analyze plain error when appellant has failed to make a plain[] error argument." *Id*. at ¶ 13, quoting *State v. Jones*, 2025-Ohio-3252, ¶ 12 (1st Dist.). *See State v. Patton*, 2021-Ohio-295, ¶ 25 (1st Dist.) (explaining that an appellate court "will not construct a claim of plain error on a defendant's behalf if the defendant fails

to argue plain error on appeal"). This is because "[t]he burden of demonstrating plain error is on the party asserting it." *State v. Payne*, 2007-Ohio-4642, ¶ 17. We therefore decline to address the forfeited arguments.

{¶21}   Davis's sole assignment of error is overruled.

### *III.  Conclusion*

{¶22}   Davis's conviction for obstructing official business was supported by sufficient evidence and was not contrary to the manifest weight of the evidence.  We affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **NESTOR, J.,** concur.